WOLF, J.
 

 Appellant, Lana Harris, raises a number of issues concerning the propriety of the trial court’s order granting appellees’ motion for directed verdict. We find no merit in the appeal. However, two .issues raised by appellant warrant discussion. Ms. Harris argues that the trial court erred in finding that section 768.13(2)(c)(l), Florida Statutes (2004), was applicable because (1) Dr. Soha was not visiting a patient of his practice when he responded to her husband, and (2) his response was not voluntary.
 

 Ms. Harris brings this action as a personal representative of the estate of her husband, Richard Hams. Mr. Harris was taken to the emergency room at St. Vincent’s Medical Center suffering from a reaction to a medication which caused his throat and tongue to swell. The attending emergency room physician requested the assistance of an anesthesiologist. Witness testimony established that anesthesia did not provide on-call services to the emergency room, although occasionally anesthesiologists on call for other areas of the hospital voluntarily provided assistance in the emergency room upon request, if they were available. Appellee, Dr. Soha, was the anesthesiologist on call for the obstetric suite and had been called in to provide an epidural for a patient in labor around the time that Mr. Harris was admitted. Dr. Soha responded to the emergency room physician’s request for assistance. Shortly thereafter, Mr. Harris died from complications. Ms. Harris subsequently filed suit, alleging that Dr. Soha failed to take actions which may have prevented her husband’s death.
 

 
 *769
 
 The trial court found that the Good Samaritan Act, section 768.13(2)(c)(l), Florida Statutes (2004), was applicable, which provides that:
 

 Any health care practitioner as defined in s. 456.001(4) who is in a hospital attending to a patient
 
 of Ids or her practice
 
 or for business or personal reasons unrelated to direct patient care, and who
 
 voluntarily responds
 
 to provide care or treatment to a patient with whom at that time the practitioner does not have a then-existing health care patient-practitioner relationship, and when such care or treatment is necessitated by a sudden or unexpected situation or by an occurrence that demands immediate medical attention, shall not be held liable for any civil damages as a result of any act or omission relative to that care or treatment, unless that care or treatment is proven to amount to conduct that is willful and wanton and would likely result in injury so as to affect the life or health of another.
 

 (Emphasis added). Following the close of Ms. Harris’ case, the trial court found that there was insufficient evidence and granted appellees’ motion for directed verdict. We review the trial court’s directed verdict de novo.
 
 See Rosa v. Dep't of Children & Families,
 
 915 So.2d 210, 211 (Fla. 1st DCA. 2005).
 

 First, Ms. Harris argues that section 768.13(2)(c)(l), Florida Statutes, was inapplicable because Dr. Soha was not at the hospital “attending to a patient
 
 of his or her practice
 
 or for business or personal reasons” when he responded to the emergency room. Ms. Harris acknowledges that Dr. Soha was at the hospital attending to his patient, but argues that the patient in the obstetric suite was not a patient of his “practice.” She reasons that anesthesiologists are not physicians who have patients of their own practices because they offer their services to any patient in the hospital who needs a doctor of their specialty. Thus, she asserts that this section of the Good Samaritan Act is inapplicable for anesthesiologists in general if they are at the hospital attending to a patient. However, she acknowledges that the Good Samaritan Act would be applicable if an anesthesiologist or any other type of physician were in the hospital “for business or personal reasons.” § 768.13(2)(c)(l), Fla. Stat.
 

 Therefore, the narrow reading of this section advocated by Ms. Harris would reach the arbitrary result of excluding anesthesiologists from immunity under this section only if they were attending to a patient, but not if they were at the hospital for business or personal reasons. This result contravenes the legislature’s intent that the immunity offered under this section “encourage health care practitioners to provide necessary emergency care to all persons without fear of litigation.” § 768.13(2)(c)(3), Fla. Stat.
 

 Instead, pursuant to the plain language of the statute, the phrase “a patient of his or her
 
 practice
 
 ” operates simply to distinguish the next requirement under this section, which is that the doctor then provide assistance to a patient “with whom at that time the practitioner does
 
 not
 
 have a then-existing health care patient-practitioner relationship.” § 768.13(2)(c)(l), Fla. Stat. (emphasis added). Thus, the trial court did not err in finding section 768.13(2)(c)(l), Florida Statutes, was applicable here because Dr. Soha was attending to a patient of his practice when he responded to the emergency room.
 

 Second, Ms. Harris argues that the trial court erred in finding that the Good Samaritan Act, section 768.13(2)(c)(l), Florida Statutes, was applicable here because the jury could have concluded that Dr. Soha’s response to the emergency
 
 *770
 
 room was not voluntary. She argues that although there was no formal policy requiring anesthesiologists to provide on-call services for the emergency room, the jury could have reasonably concluded that an informal policy existed which required Dr. Soha to respond based on testimony that anesthesiologists had previously responded to the emergency room upon request, if they were available. However, testimony that anesthesiologists had previously volunteered to respond fails to demonstrate that anesthesiologists had a responsibility for patients in the emergency room. Therefore, the trial court did not err in finding that the Good Samaritan Act was applicable here because Dr. Soha’s response to the emergency room was voluntary. Thus, the trial court’s directed verdict for appellees is affirmed.
 

 KAHN and VAN NORTWICK, JJ., concur.